**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAMONT E. STALLWORTH, Ph.D., | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Hon. |
| v. | ) | Judge Presiding |
| | ) | |
| LOYOLA UNIVERSITY CHICAGO, | ) | |
| ALFRED GINI, in his individual capacity, | ) | |
| KATHLEEN GETZ, in her individual | ) | |
| capacity, and JOHN PELISSERO, in | ) | |
| his individual capacity, | ) | |
| | ) | |
| | ) | JURY DEMANDED |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Lamont E. Stallworth, Ph.D., by and through his attorneys, Elaine K.B. Siegel &

Associates, P.C., complains as follows against Loyola University Chicago ("Loyola" or

"University"), Alfred Gini, in his individual capacity, Kathleen Getz, in her individual capacity,

and John Pelissero, in his individual capacity:

**PARTIES**

1.      Plaintiff Lamont E. Stallworth, Ph.D., is a resident of the County of Cook, State of

Illinois.  At all relevant times hereto, Plaintiff was a tenured full professor in the Quinlan School

of Business ("Quinlan School") of Loyola University Chicago.

2.      Defendant Loyola University Chicago is a private institution of higher education, which

is incorporated in, has offices, and does business in Cook County, Illinois.

3.      Defendant Alfred Gini, in his individual capacity, is employed by Defendant Loyola as

Chair of the Department of Management, has an office in and does business in the County of

Cook, State of Illinois.

4. Defendant Kathleen Getz, in her individual capacity, is employed by Defendant Loyola as the School of Business Dean, has an office in and does business in the County of Cook, State of Illinois.

5. Defendant John Pelissero, in his individual capacity, is employed by Defendant Loyola as Provost, has an office in and does business in the County of Cook, State of Illinois.

## JURISDICTION AND VENUE

6. All of the relevant actions complained hereof took place in the County of Cook, State of Illinois.

7. This is an action for damages seeing to enforce rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e *et seq*.; the ADEA, 29 U.S.C.§ 621; and the ADA, 42 U.S.C. § 12112 et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.,* and 42 U.S.C. § 1981. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, § 1343, and §2201. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367, over the state law claim of Counts 8, 10, 14, 15, and 16, because the state law claims are based upon the same nucleus of operative facts the federal claims, and because the exercise of supplemental jurisdiction would further judicial economy and the ends of justice.

8. Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391, in that the Plaintiff resides, and the Defendant resides, have offices and do business in the Northern District of Illinois, Eastern Division, in Cook County, Illinois, and the causes of action arose here.

## FACTS

### Defendants' Racial Discrimination Against Plaintiff

9. Plaintiff Lamont Stallworth is a Black African-American male, age 67.

10. Plaintiff began working for Loyola as a Faculty Member in 1981. He was tenured and a

full professor in the Quinlan School of Business ("Quinlan School") at all relevant times, up until the time of termination.

11.     Plaintiff was one of the most senior Quinlan School faculty members, and one of the most senior, perhaps the most senior, Black African-American faculty member at Loyola.

12.     Plaintiff's primary field of scholarly and professional expertise is alternative dispute resolution ("ADR"), human resources, employment law and public policy.

13.     In his 33 years at Loyola, Plaintiff has become a nationally-recognized expert in ADR and public policy.  His accomplishments include, but are not limited to the following:

      a.     He has consistently published in top-tier journals, including Harvard Negotiations Law Review, Ohio State Journal on Dispute Resolution, Cornell's Industrial and Labor Relations Review, and other ADR, human resources, and law journals.

      b.     Plaintiff has received awards for his research.  His research has served as the basis for U.S. Congressional legislative bills, and the establishment of EEO administrative agency mediation programs (including the U. S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Human Rights Commission, as well as EEO mediation programs for courts.

      c.     Plaintiff is a past president of the international ADR organization called Society of Professionals in Dispute Resolution.  He served on the Board of Directors of the Industrial Relations Research Association, and is currently a member of the Board of Advisers of Cornell's Scheinman Institute on Conflict Resolution. He is also a member of the National Academy of Arbitrators.

      d.     Recently Plaintiff has been named the "Scholar in Residence" of the Labor and Employment Section of the American Bar Association.  In this capacity he is

conducting applied ADR public policy research projects regarding the use of ADR systems and processes in workplace bullying cases, and the use of ADR and early resolution of Iraq and Afghanistan war veterans' reasonable accommodation requests for military-connected disability.

14.     Throughout his employment with Loyola, Plaintiff has performed his job satisfactorily, Defendants false and pretextual accusations notwithstanding.

15.     Over the years, Plaintiff has criticized Loyola's grievance and disciplinary procedures, in that it disadvantages minority employees, and fails to meet professional standards of due process.

16.     On information and belief, in its 93-year history, the Quinlan School of Business **had never hired a Black African-American** to a tenured or tenure-track position, until the 2014-15 academic year.

17.     Plaintiff came into the Quinlan School after his former department, Human Resources and Employee Relations ("HRER"), transferred, and the HRER faculty merged into the Quinlan School in January, 2002.

18.     As of July 1, 2012, Plaintiff reported for the first time to Dr. Alfred Gini, Chair of the Department of Management.

19.     Since coming on faculty at Loyola in 1981, Plaintiff has suffered, persistently, a racially hostile and exclusionary work environment, adversely affecting his mental and physical health.

20.     From 1981 to the present, Plaintiff complained repeatedly about the hostile work environment in the HRER Department, and then to the Department of Management at the Quinlan School.   He formally and informally complained about the racially hostile work environment, and racially discriminatory hiring and employment practices to the Loyola administration, including, but not limited to, Provost John Pelissero, School of Business Dean

4

Kathleen Getz, Department Chair Alfred Gini, the Department of Human Resources, and other administration.

21.     Loyola has failed and refused to timely and objectively act on Plaintiff's complaints of hostile work environment.

**Loyola's Refusal of Reasonable Accommodations**

22.     Plaintiff suffers from several serious and life-threatening disabilities.

23.     At all relevant times, Plaintiff has repeatedly sought reasonable accommodations for his disabilities.

24.     One of the needed accommodations was a nine-month on-campus work schedule of Fall, Spring and Summer Quarters, with no duties on campus during the Winter Quarter, neither teaching nor non-teaching duties, in violation of a compromise agreement pursuant to proceedings in the EEOC in 2004.

25.     Suddenly, in the fall of 2012, Defendants attempted to schedule Plaintiff for non-teaching duties during winter quarter.

26.     Prior to the 2012-2013 school year, Plaintiff maintained this nine-month on-campus work schedule for a quarter century.

27.     Plaintiff's nine-month on-campus work schedule was consistent with the terms of his employment, and with that of similarly-situated tenured faculty, which provides for nine months' work on campus, *i.e.,* three academic quarters.

28.     Most faculty are in residence on campus for Fall, Winter and Spring Quarters, with no duties on campus during the Summer Quarter, neither teaching nor non-teaching duties.

29.     Plaintiff's Fall, Spring, Summer Quarter schedule enabled the University to offer courses during Summer Quarter, when most tenured faculty are not in residence.

30. On information and belief, the University has had to recruit faculty, both internally and externally, to teach courses during Summer Quarter, so as to meet student demand for summer learning opportunities, and to accommodate graduation deadlines.

31. At no time during this approximately twenty-five-year period did the University claim that Plaintiff's nine-month on-campus work schedule placed an undue burden on Loyola.

32. The University failed to engage in the interactive process in good faith.

33. The University failed to provide reasonable accommodations for Plaintiff's disabilities.

34. The University knowingly made work assignments that exacerbate Plaintiff's known disabilities, forcing him to take disability and FMLA leaves to protect his health, causing physical injury and emotional distress, and disrupting his academic career.

35. In early 2012, Plaintiff informed the School of Business and the University (hereinafter the "Administration") that he needed to continue his existing nine-month on-campus work schedule, as a reasonable accommodation to his known ADAA-covered health conditions.

36. For over a month, the University failed to respond to Plaintiff's request for the reasonable accommodation of a nine-month work schedule, or to confirm that he could continue with his existing nine-month schedule, pursuant to the EEOC compromise agreement.

37. On or about February 27, 2012, Plaintiff formally requested of Provost Pelissero a continuation of his reasonable accommodation agreement. Provost Pelissero is the coordinator of faculty requests for reasonable accommodations.

38. By letter dated February 7, 2012, Plaintiff requested the additional reasonable accommodation of relocating his office, to minimize stressors that exacerbated his medical conditions.

39.     In or about June, 2012, Provost Pelissero appointed Human Resources Director Joan Stasiak to coordinate Plaintiff's reasonable accommodation requests. Dean Kathleen Getz and Department Chair Dr. Alfred Gini (in cooperation with Provost Pelissero) were tasked with facilitating and implementing Plaintiff's reasonable accommodation requests.

40.     On June 5, 2012, Plaintiff submitted a second formal request to Joan Stasiak, Director of Human Resources, for the continuation of his reasonable accommodations, supported by the medical reports of four highly-qualified health-care providers.

41.     For over a month, the University failed to respond to Plaintiff's June 5, 2012 request for reasonable accommodations.

42.     On July 12, 2012, Plaintiff requested that Ms. Stasiak respond to his June 5, 2012 letter.

43.     Ms. Stasiak did not address Plaintiff's request for reasonable accommodations. She did not request further medical information from Plaintiff, and did not contend that his requested accommodations would constitute an undue hardship or were unreasonable.

44.     Ms. Stasiak did not confirm Plaintiff's *status quo* teaching schedule, pursuant to the EEOC compromise agreement, but offered a nine-month schedule with a pay reduction, 5/6 of full-time pay.

45.     On August 1, 2012, the University finally offered to relocate Plaintiff's office, but gave him only a ten-day period to do so, during a time when he was teaching an intensive course in Loyola's Executive MBA program. Plaintiff was also preparing for his regularly-scheduled teaching schedule in Fall Quarter, which was to begin in August, 2012. The University knew or should have known of the scheduling conflict with his teaching obligations.

46.     On or about August 6, 2012, Plaintiff requested that the University defer his office move until after Winter Quarter.  He also requested that the University clean and paint the office, which had long been occupied by another faculty member, and was in poor condition.

47.     In response to Plaintiff's efforts to negotiate the timing of his office relocation, on or about August 21, 2012, the University withdrew the offer to move his office.

48.     Plaintiff responded to Ms. Stasiak's August 1, 2012 letter by way of an August 16, 2012 follow-up report by one of his treating physicians, Dr. Edward Tuder.

49.     While his requests for reasonable accommodations were pending, in an email dated September 21, 2012, Dr. Gini assigned Plaintiff a schedule of teaching and administrative duties that was inconsistent with Ms. Stasiak's proposal of August 1, 2012, and violated the recommendations and limitations established by Plaintiff's qualified healthcare providers.

50.     On information and belief, Dr. Gini knew or should have known of the pending discussions, under the interactive process, of Plaintiff's requests for reasonable accommodations, including his continued on-campus nine-month work schedule.   Dr. Gini served on the team that was tasked by Provost Pelissero to facilitate Plaintiff's requests for reasonable accommodation.

51.     Given the threat to Plaintiff's health of complying with the work schedule imposed by Dr. Gini, he was forced into an FMLA short-term disability leave for the Fall Quarter, 2012.

52.     In December, 2012, Dr. Gini called Plaintiff at home to encourage him to retire early and to consider accepting a $100,000 retirement incentive.

53.     Dr. Gini continued to interfere with the interactive process.  By email dated January 9, 2013, Dr. Gini, assigned Plaintiff to teach a course, HRER 417 – Managing and Motivating the Workplace, for Summer Quarter, 2013.

54.     Dr. Gini knew or should have known that Plaintiff was not academically qualified ("AQ" qualified) to teach Managing and Motivating the Workplace. Plaintiff's specialization is alternative dispute resolution, labor and management relations and human resources and employment law. Plaintiff has never taken a course regarding worker motivation, taught a course in this area, conducted research, consulted, or published in this area.

55.     Plaintiff reminded Dr. Gini that he was not AQ qualified to teach Managing and Motivating the Workplace.

56.     Similarly-situated faculty are not required or permitted to teach courses for which they are not AQ qualified. For example, Dr. Suzy Fox (Caucasian) taught the required HRER ethics course for a number of years.   Dr. Fox had conducted research and published in this area. However, soon after the merger of HRER into the School of Business, Dr. Fox was deemed not AQ qualified to teach that ethics course, and no longer did so.

**Defendants' Retaliation Against Plaintiff for Seeking Reasonable Accommodations**

57.     Rather than extending reasonable accommodations or engaging in good faith in the interactive process, during autumn quarter, Defendants Getz and Gini decided to respond with disciplinary charges.

58.     On February 4, 2013, Plaintiff sent a lengthy, detailed complaint regarding the University's failure to respond to his requests for reasonable accommodations, as well as Dr. Gini's interference with the interactive process.

59.     Four days later, on February 8, 2013, Dr. Gini suddenly brought a list of alleged deficiencies with Plaintiff's performance, seeking severe discipline.  Dr. Gini had not previously brought these alleged deficiencies to Plaintiff's attention, or given him an opportunity to contest or remediate the alleged deficiencies.

60.     By e-mail dated February 13, 2013, Dean Getz initiated the disciplinary process against Plaintiff, issuing a series of charges including not only those raised by Dr. Gini on February 8, 2013, but adding new allegations, and placing Plaintiff on paid administrative leave.

61.     The allegations of performance deficiencies asserted by Dr. Gini and Dean Getz were false and pretextual.

62.     On or about April 5, 2013, Dean Getz submitted a recommendation for a lengthy suspension without pay for Plaintiff to Provost Pelissero.

63.     On or about June 21, 2013, Provost Pelissero told Plaintiff that Defendants Getz and Gini had imposed the discipline to prevent Plaintiff from taking medical leave.

64.     In a letter of July 18, 2013, Provost Pelissero approved Plaintiff's suspension without pay, and issued directives requiring work that violated the recommendations of Plaintiff's medical providers, and that violated reasonable accommodations that the University had previously provided.

65.     On or about July 31, 2013, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. EEOC, alleging discrimination based on his race, disabilities, and retaliation.

66.     Plaintiff continued to seek reasonable accommodations for his disabilities, which the University continued to deny.

67.     In or about September, 2013, the University and Plaintiff agreed to engage in settlement negotiations, and agreed to a "cooling-off" period, *i.e.,* a stay of penalties and obligations, pending further settlement negotiations.

68.     On or about December 20, 2013, the University broke off the settlement negotiations.  It continued to deny Plaintiff reasonable accommodations, so that he could resume his work.

69.     On or about January 31, 2014, Dean Getz recommended Plaintiff for termination, based upon a supposed failure to return to work, and "job abandonment."

70.     The claim of job abandonment was false and pretextual.

71.     Despite his role in the failed interactive process, and his role as decision-maker in suspending Professor Stallworth without pay, Provost Pelissero refused to recuse himself from the final decision-making process.

72.     The University refused to engage a neutral third-party investigator to review Plaintiff's allegations.

73.     On or about February 24, 2014, the University terminated Plaintiff's employment for the false and pretextual reasons of failure to return to work, "job abandonment," and "continued misconduct."

**COUNT I**
**DISCRIMININATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12112 *et seq.***

1-73.   Plaintiff restates and realleges paragraphs 1-73 above, as if fully set forth herein.

74.     Plaintiff suffers from several serious and life threatening disabilities.

75.     Plaintiff has been diagnosed with major depression, generalized anxiety disorder, seasonal affective disorder, sleep apnea, kidney disease, neuropathy, diabetes, and tinnitus (i.e. ringing in the ear).

76.     His disabilities notwithstanding, Plaintiff was able to perform the essential functions of his job, with reasonable accommodations.

77.     Defendants knew of Plaintiff's disabilities.

78.     As a result of his disabilities, Plaintiff requested certain reasonable accommodations to allow him to perform the essential functions of his position, supported by documentation from

Plaintiff's qualified health-care providers.

79.     The University failed to engage in the interactive process in good faith, but obstructed Plaintiff's efforts to negotiate reasonable accommodations.

80.     The University did not grant Plaintiff's requests for reasonable accommodations, but rescinded accommodations that Plaintiff had previously arranged with the Administration.

81.     The University failed to engage in the interactive process, obstructed Plaintiff's efforts to engage in the interactive process, and determined to address Plaintiff's needs for reasonable accommodations through the disciplinary process, first stigmatizing him by a suspension with pay, then suspending him without pay, then terminating him.

82.     Because the University rejected Plaintiff's requests for reasonable accommodation, Plaintiff was forced to take short-term disability and FMLA leaves, because he was unable to work under conditions that exacerbated his life-threatening disabilities.

83.     The purported reasons for the University's adverse actions against Plaintiff were false and pretextual.

84.     Loyola discriminated against Plaintiff on the basis of his disabilities, in violation of the ADA, by failing to engage in the interactive process, blocking his efforts to engage in the interactive process, demanding that he work under conditions injurious to his health, failing to reasonably accommodate his disabilities, disciplining him due to his disabilities, and ultimately terminating his employment.

85.     As a direct and proximate result of the University's discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

86.     On July 31, 2013, Plaintiff filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights, alleging discrimination based on

disability.

87.     On or about June 26, 2014, the EEOC issued Plaintiff a right to sue letter, a copy of which is attached hereto as Exhibit A.

88.     Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

89.     Plaintiff has suffered irreparable injury.

90.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in discriminatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a.  That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of intentional discrimination against Plaintiff on the basis of actual and/or perceived disability;

b.  That this Honorable Court order any and all negative evaluations and disciplinary materials expunged from Plaintiff's personnel file;

c.  That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d.  That this Honorable Court award Plaintiff consequential damages;

e.  That this Honorable Court award pre-judgment interest and costs;

f.  That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g.  That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h.  That this Honorable Court award reasonable attorney's fees and costs; and

i.  That this Honorable Court award such other and further relief as it may deem just and equitable.

### COUNT II
### RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12112 *et seq.*

1-90.  Plaintiff repeats and realleges paragraphs 1-90 above, as if fully set forth herein.

91.  As a result of his covered disabilities, from time to time Plaintiff requested certain reasonable accommodations to allow him to perform the essential functions of his job, as more fully set forth above.

92.  Stallworth supported each of his requests for accommodations with documentation from his qualified health care providers, whose validity the University never questioned.

93.  As more fully set forth above, the University failed to reasonably accommodate Plaintiff's disabilities, and Gini obstructed the interactive process between Plaintiff and the University's Human Relations Department.

94.  Rather than extending reasonable accommodations or engaging in good faith in the interactive process, during autumn quarter, Defendants Getz and Gini decided to respond with disciplinary charges.

95.  By letter to the administration dated February 4, 2012, Plaintiff lengthily advised the University of their obligations under the ADAA, the Illinois Human Rights Act, and Section 504 of the Rehabilitation Act, and objected that they were failing to meet their legal obligations. He Objected to the University's failure to respond to his requests for reasonable accommodations, as well as Gini's interference with the interactive process.

96.  Four days later, on February 8, 2013, Gini suddenly brought a list of alleged deficiencies

with Plaintiff's performance, seeking severe discipline. Gini had not previously brought these alleged deficiencies to Plaintiff's attention, or given him an opportunity to contest or remediate the alleged deficiencies.

97. By e-mail dated February 13, 2013, Dean Getz initiated the disciplinary process against Plaintiff, issuing a series of charges including not only those raised by Gini on February 8, 2013, but adding new allegations, and placing Plaintiff on paid administrative leave.

98. The allegations of performance deficiencies asserted by Dr. Gini and Dean Getz were false and pretextual.

99. On or about April 5, 2013, Dean Getz submitted a recommendation for a lengthy suspension without pay for Plaintiff to Provost Pelissero.

100. On or about June 21, 2013, Provost Pelissero told Plaintiff that Defendants Getz and Gini had imposed the discipline to prevent Plaintiff from taking medical leave.

101. In a letter of July 18, 2013, Provost Pelissero approved Plaintiff's suspension without pay, and issued directives requiring work that violated the recommendations of Plaintiff's medical providers, and that violated reasonable accommodations the University had previously provided.

102. On or about July 31, 2013, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. EEOC, involving Provost Pelissero, Dean Getz and Dr. Gini, and alleging discrimination based on his race, disabilities, and retaliation.

103. Defendants knew of Plaintiff's charge of discrimination.

104. On August 1, 2013, Provost Pelissero directed Plaintiff to perform certain administrative duties. Certain of those directives violated Plaintiff's pending requests for reasonable accommodation.

105.    Plaintiff continued to seek reasonable accommodations for his disabilities, which the University continued to deny.

106.    In or about September, 2013, the University and Plaintiff agreed to engage in settlement negotiations, and agreed to a "cooling-off" period, *i.e.,* a stay of penalties and obligations, pending further settlement negotiations.

107.    The University failed to negotiate in good faith, and broke off the settlement negotiations on or about December 20, 2013.

108.    The University failed to extend reasonable accommodations so that Plaintiff could return to work, which he was unable to perform without severe health consequences.

109.    On or about January 31, 2014, Dean Getz recommended Plaintiff for termination, based upon a supposed failure to return to work, and "job abandonment."

110.    The charge of job abandonment was false and pretextual.

111.   In or about February, 2014, Plaintiff presented a defense to the dismissal charges, stating again that the University was violating his rights under the ADAA, the Illinois Human Rights Act, and Section 504 of the Rehabilitation Act.

112.    Despite his role in the failed interactive process, and his role as decision-maker in suspending Professor Stallworth without pay, Provost Pelissero refused to recuse himself from the final decision-making process.

113.    The University refused to engage a neutral third-party investigator to review Plaintiff's allegations.

114.    On or about February 24, 2014, the University terminated Plaintiff's employment for the false and pretextual reasons of failure to return to work, "job abandonment," and "continued misconduct."

115.    On or about February 24, 2014, refusing to recuse himself despite a clear conflict of interest, Provost Pelissero approved Dean Getz's recommendation of termination.

116.    Faculty members who have not engaged in protected activity were allowed to work a nine-month on-campus schedule, and were neither disciplined nor terminated.

117.    Faculty members who have not engaged in protected activity were not required to teach courses for which they were not AQ Qualified.

118.    Faculty members who have not engaged in protected activity were allowed to relocate their offices.

119.    Plaintiff has been retaliated against for one or more of the following protected activities: seeking reasonable accommodations, filing Charges of Discrimination with the EEOC, filing a Charge of Discrimination with the IDHR and EEOC, complaining about Loyola's discrimination based on his disabilities, and complaining about Loyola's failure to provide Plaintiff with reasonable accommodations.

120.    Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

121.    As a direct and proximate result of Defendants' retaliatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

122.    Plaintiff has suffered irreparable injury.

123.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in retaliatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of retaliation against Plaintiff;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h. That this Honorable Court award reasonable attorney's fees and costs; and

i. That this Honorable Court award such other and further relief as it may deem just and equitable.

**COUNT III**
**DISCRIMININATION IN VIOLATION OF**
**THE SECTION 504 OF THE REHABILITATION ACT of 1973**
**29 U.S.C. § 701, *et seq.***

1-123. Plaintiff restates and realleges paragraphs 1-123 above, as if fully set forth herein.

124. Defendant Loyola is a recipient of federal financial assistance.

125. Plaintiff suffers from several serious and life threatening disabilities.

126. Plaintiff has been diagnosed with major depression, generalized anxiety disorder, seasonal affective disorder, sleep apnea, kidney disease, neuropathy, diabetes, and tinnitus (i.e.

ringing in the ear).

127.    His disabilities notwithstanding, Plaintiff was able to perform the essential functions of his job, with reasonable accommodations.

128.    Defendants knew of Plaintiff's disabilities.

129.    As a result of his disabilities, Plaintiff requested certain reasonable accommodations to allow him to perform the essential functions of his position, supported by documentation from Plaintiff's qualified health-care providers.

130.    The University failed to engage in the interactive process in good faith, but obstructed Plaintiff's efforts to negotiate reasonable accommodations.

131.    The University did not grant Plaintiff's requests for reasonable accommodations, but rescinded accommodations that Plaintiff had previously arranged with the Administration.

132.    The University failed to engage in the interactive process, obstructed Plaintiff's efforts to engage in the interactive process, and determined to address Plaintiff's needs for reasonable accommodations through the disciplinary process, first stigmatizing him by a suspension with pay, then suspending him without pay, then terminating him.

133.    Because the University rejected Plaintiff's requests for reasonable accommodation, Plaintiff was forced to take short-term disability and FMLA leaves, because he was unable to work under conditions that exacerbated his life-threatening disabilities.

134.    The purported reasons for the University's adverse actions against Plaintiff were false and pretextual.

135.    Loyola discriminated against Plaintiff on the basis of his disabilities, in violation of the ADA, by failing to engage in the interactive process, blocking his efforts to engage in the interactive process, demanding that he work under conditions injurious to his health, failing to

reasonably accommodate his disabilities, disciplining him due to his disabilities, and ultimately terminating his employment.

136. As a direct and proximate result of the University's discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, reputational loss, and the destruction of an academic career of more than three decades.

137. On July 31, 2013, Plaintiff filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights, alleging discrimination based on disability.

138. On or about June 26, 2014, the EEOC issued Plaintiff a right to sue letter, a copy of which is attached hereto as Exhibit A.

139. Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

140. As a direct and proximate result of Defendants' discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

141. Plaintiff has suffered irreparable injury.

142. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in discriminatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of intentional discrimination against Plaintiff on the basis of actual and/or perceived disability;

b. That this Honorable Court order any and all negative evaluations and disciplinary

materials expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h. That this Honorable Court award reasonable attorney's fees and costs; and

i. That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT IV
## RETALIATION IN VIOLATION OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 701, *et seq.*

1-142. Plaintiff repeats and realleges paragraphs 1-142 above, as if fully set forth herein.

143. Defendant Loyola is a recipient of federal financial assistance.

144. As a result of his covered disabilities, from time to time Plaintiff requested certain reasonable accommodations to allow him to perform the essential functions of his job, as more fully set forth above.

145. Stallworth supported each of his requests for accommodations with documentation from his qualified health care providers, whose validity the University never questioned.

146. As more fully set forth above, the University failed to reasonably accommodate

Plaintiff's disabilities, and Gini obstructed the interactive process between Plaintiff and the University's Human Relations Department.

147.    Rather than extending reasonable accommodations or engaging in good faith in the interactive process, during autumn quarter, Defendants Getz and Gini decided to respond with disciplinary charges.

148.    By letter to the administration dated February 4, 2012, Plaintiff lengthily advised the University of their obligations under the ADAA, the Illinois Human Rights Act, and Section 504 of the Rehabilitation Act, and objected that they were failing to meet their legal obligations.  He Objected to the University's failure to respond to his requests for reasonable accommodations, as well as Gini's interference with the interactive process.

149.    Four days later, on February 8, 2013, Gini suddenly brought a list of alleged deficiencies with Plaintiff's performance, seeking severe discipline.  Gini had not previously brought these alleged deficiencies to Plaintiff's attention, or given him an opportunity to contest or remediate the alleged deficiencies.

150.    By e-mail dated February 13, 2013, Dean Getz initiated the disciplinary process against Plaintiff, issuing a series of charges including not only those raised by  Gini on February 8, 2013, but adding new allegations, and placing Plaintiff on paid administrative leave.

151.    The allegations of performance deficiencies asserted by Dr. Gini and Dean Getz were false and pretextual.

152.    On or about April 5, 2013, Dean Getz submitted a recommendation for a lengthy suspension without pay for Plaintiff to Provost Pelissero.

153.    On or about June 21, 2013, Provost Pelissero told Plaintiff that Defendants Getz and Gini had imposed the discipline to prevent Plaintiff from taking medical leave.

154.    In a letter of July 18, 2013, Provost Pelissero approved Plaintiff's suspension without pay, and issued directives requiring work that violated the recommendations of Plaintiff's medical providers, and that violated reasonable accommodations the University had previously provided.

155.    On or about July 31, 2013, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. EEOC, involving Provost Pelissero, Dean Getz and Dr. Gini, and alleging discrimination based on his race, disabilities, and retaliation.

156.    Defendants knew of Plaintiff's charge of discrimination.

157.    On August 1, 2013, Provost Pelissero directed Plaintiff to perform certain administrative duties.    Certain of those directives violated Plaintiff's pending requests for reasonable accommodation.

158.    Plaintiff continued to seek reasonable accommodations for his disabilities, which the University continued to deny.

159.    In or about September, 2013, the University and Plaintiff agreed to engage in settlement negotiations, and agreed to a "cooling-off" period, *i.e.,* a stay of penalties and obligations, pending further settlement negotiations.

160.    The University failed to negotiate in good faith, and broke off the settlement negotiations on or about December 20, 2013.

161.    The University failed to extend reasonable accommodations so that Plaintiff could return to work, which he was unable to perform without severe health consequences.

162.    On or about January 31, 2014, Dean Getz recommended Plaintiff for termination, based upon a supposed failure to return to work, and "job abandonment."

163.    The charge of job abandonment was false and pretextual.

164.  In February, 2014, Plaintiff presented a defense to the dismissal charges, stating again that the University was violating his rights under the ADAA, the Illinois Human Rights Act, and Section 504 of the Rehabilitation Act.

165.  Despite his role in the failed interactive process, and his role as decision-maker in suspending Professor Stallworth without pay, Provost Pelissero refused to recuse himself from the final decision-making process.

166.  The University refused to engage a neutral third-party investigator to review Plaintiff's allegations.

167.  On or about February 24, 2014, the University terminated Plaintiff's employment for the false and pretextual reasons of failure to return to work, "job abandonment," and "continued misconduct."

168.  On or about February 24, 2014, refusing to recuse himself despite a clear conflict of interest, Provost Pelissero approved Dean Getz's recommendation of termination.

169.  Faculty members who have not engaged in protected activity were allowed to work a nine-month on-campus schedule, and were neither disciplined nor terminated.

170.  Faculty members who have not engaged in protected activity were not required to teach courses for which they were not AQ Qualified.

171.  Faculty members who have not engaged in protected activity were allowed to relocate their offices.

172.  Plaintiff has been retaliated against for one or more of the following protected activities: seeking reasonable accommodations, filing Charges of Discrimination with the EEOC, filing a Charge of Discrimination with the IDHR and EEOC, complaining about Loyola's discrimination based on his disabilities, and complaining about Loyola's failure to provide Plaintiff with

reasonable accommodations.

173. Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

174. As a direct and proximate result of the University's retaliatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

175. Plaintiff has suffered irreparable injury.

176. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in retaliatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

    a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of retaliation against Plaintiff;

    b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

    c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

    d. That this Honorable Court award Plaintiff consequential damages;

    e. That this Honorable Court award pre-judgment interest and costs;

    f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

    g. That this Honorable Court award Plaintiff money reasonably calculated to

compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h.   That this Honorable Court award reasonable attorney's fees and costs; and

i.   That this Honorable Court award such other and further relief as it may deem just and equitable.

### COUNT V
### DISABILITY DISCRIMINATION IN VIOLATION OF
### THE ILLINOIS HUMAN RIGHTS ACT

1-176.   Plaintiff restates and realleges paragraphs 1-176 above, as if fully set forth herein.

177.   Plaintiff suffers from several serious and life threatening disabilities.

178.   Plaintiff has been diagnosed with major depression, generalized anxiety disorder, seasonal affective disorder, sleep apnea, kidney disease, neuropathy, diabetes, and tinnitus (i.e. ringing in the ear).

179.   His disabilities notwithstanding, Plaintiff was able to perform the essential functions of his job, with reasonable accommodations.

180.   Defendants knew of Plaintiff's disabilities.

181.   As a result of his disabilities, Plaintiff requested certain reasonable accommodations to allow him to perform the essential functions of his position, supported by documentation from Plaintiff's qualified health-care providers.

182.   The University failed to engage in the interactive process in good faith, but obstructed Plaintiff's efforts to negotiate reasonable accommodations.

183.   The University did not grant Plaintiff's requests for reasonable accommodations, but rescinded accommodations that Plaintiff had previously arranged with the Administration.

184.   The University failed to engage in the interactive process, obstructed Plaintiff's efforts to

engage in the interactive process, and determined to address Plaintiff's needs for reasonable accommodations through the disciplinary process, first stigmatizing him by a suspension with pay, then suspending him without pay, then terminating him.

185.    Because the University rejected Plaintiff's requests for reasonable accommodation, Plaintiff was forced to take short-term disability and FMLA leaves, because he was unable to work under conditions that exacerbated his life-threatening disabilities.

186.    The purported reasons for the University's adverse actions against Plaintiff were false and pretextual.

187.    Loyola discriminated against Plaintiff on the basis of his disabilities, in violation of the ADA, by failing to engage in the interactive process, blocking his efforts to engage in the interactive process, demanding that he work under conditions injurious to his health, failing to reasonably accommodate his disabilities, disciplining him due to his disabilities, and ultimately terminating his employment.

188.    As a direct and proximate result of the University's discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, reputational loss, and the destruction of an academic career of more than three decades.

189.    On July 31, 2013, Plaintiff filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"), alleging discrimination based on disability.

190.    On or about June 13, 2014, the IDHR issued Plaintiff a right to sue letter, a copy of which is attached hereto as Exhibit B.

191.    Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's protected rights.

192.    As a direct and proximate result of the University's discriminatory treatment, Plaintiff

suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

193.    Plaintiff has suffered irreparable injury.

194.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in discriminatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a.    That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of intentional discrimination against Plaintiff on the basis of actual and/or perceived disability;

b.    That this Honorable Court order any and all negative evaluations and disciplinary materials expunged from Plaintiff's personnel file;

c.    That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d.    That this Honorable Court award Plaintiff consequential damages;

e.    That this Honorable Court award pre-judgment interest and costs;

f.    That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g.    That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h.    That this Honorable Court award reasonable attorney's fees and costs; and

i.    That this Honorable Court award such other relief as it may deem just and equitable.

## COUNT VI
## RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
## FOR COMPLAINING OF DISCRIMINATION BASED ON DISABILITY

1-194.  Plaintiff repeats and realleges paragraphs 1-194 above, as if fully set forth herein.

195.    As a result of his covered disabilities, from time to time Plaintiff requested certain reasonable accommodations to allow him to perform the essential functions of his job, as more fully set forth above.

196.    Stallworth supported each of his requests for accommodations with documentation from his qualified health care providers, whose validity the University never questioned.

197.    As more fully set forth above, the University failed to reasonably accommodate Plaintiff's disabilities, and Gini obstructed the interactive process between Plaintiff and the University's Human Relations Department.

198.    Rather than extending reasonable accommodations or engaging in good faith in the interactive process, during autumn quarter, Defendants Getz and Gini decided to respond with disciplinary charges.

199.    By letter to the administration dated February 4, 2012, Plaintiff lengthily advised the University of their obligations under the ADAA, the Illinois Human Rights Act, and Section 504 of the Rehabilitation Act, and objected that they were failing to meet their legal obligations.  He objected to the University's failure to respond to his requests for reasonable accommodations, as well as Gini's interference with the interactive process.

200.    Four days later, on February 8, 2013, Gini suddenly brought a list of alleged deficiencies with Plaintiff's performance, seeking severe discipline.  Gini had not previously brought these alleged deficiencies to Plaintiff's attention, or given him an opportunity to contest or remediate the alleged deficiencies.

201.    By e-mail dated February 13, 2013, Dean Getz initiated the disciplinary process against Plaintiff, issuing a series of charges including not only those raised by Gini on February 8, 2013, but adding new allegations, and placing Plaintiff on paid administrative leave.

202.    The allegations of performance deficiencies asserted by Dr. Gini and Dean Getz were false and pretextual.

203.    On or about April 5, 2013, Dean Getz submitted a recommendation for a lengthy suspension without pay for Plaintiff to Provost Pelissero.

204.    On or about June 21, 2013, Provost Pelissero told Plaintiff that Defendants Getz and Gini had imposed the discipline to prevent Plaintiff from taking medical leave.

205.    In a letter of July 18, 2013, Provost Pelissero approved Plaintiff's suspension without pay, and issued directives requiring work that violated the recommendations of Plaintiff's medical providers, and that violated reasonable accommodations the University had previously provided.

206.    On or about July 31, 2013, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. EEOC, involving Provost Pelissero, Dean Getz and Dr. Gini, and alleging discrimination based on his race, disabilities, and retaliation.

207.    Defendants knew of Plaintiff's charge of discrimination.

208.    On August 1, 2013, Provost Pelissero directed Plaintiff to perform certain administrative duties.  Certain of those directives violated Plaintiff's pending requests for reasonable accommodation.

209.    Plaintiff continued to seek reasonable accommodations for his disabilities, which the University continued to deny.

210.    In or about September, 2013, the University and Plaintiff agreed to engage in settlement

negotiations, and agreed to a "cooling-off" period, *i.e.,* a stay of penalties and obligations, pending further settlement negotiations.

211.    The University failed to negotiate in good faith, and broke off the settlement negotiations on or about December 20, 2013.

212.    The University failed to extend reasonable accommodations so that Plaintiff could return to work, which he was unable to perform without severe health consequences.

213.    On or about January 31, 2014, Dean Getz recommended Plaintiff for termination, based upon a supposed failure to return to work, and "job abandonment."

214.    The charge of job abandonment was false and pretextual.

215.  In February, 2014, Plaintiff presented a defense to the dismissal charges, stating again that the University was violating his rights under the ADAA, the Illinois Human Rights Act, and Section 504 of the Rehabilitation Act.

216.    Despite his role in the failed interactive process, and his role as decision-maker in suspending Professor Stallworth without pay, Provost Pelissero refused to recuse himself from the final decision-making process.

217.    The University refused to engage a neutral third-party investigator to review Plaintiff's allegations.

218.    On or about February 24, 2014, the University terminated Plaintiff's employment for the false and pretextual reasons of failure to return to work, "job abandonment," and "continued misconduct."

219.    On or about February 24, 2014, refusing to recuse himself despite a clear conflict of interest, Provost Pelissero approved Dean Getz's recommendation of termination.

220.    Faculty members who have not engaged in protected activity were allowed to work a

nine-month on-campus schedule, and were neither disciplined nor terminated.

221.    Faculty members who have not engaged in protected activity were not required to teach courses for which they were not AQ Qualified.

222.    Faculty members who have not engaged in protected activity were allowed to relocate their offices.

223.    Plaintiff has been retaliated against for one or more of the following protected activities: seeking reasonable accommodations, filing Charges of Discrimination with the EEOC, filing a Charge of Discrimination with the IDHR and EEOC, complaining about Loyola's discrimination based on his disabilities, and complaining about Loyola's failure to provide Plaintiff with reasonable accommodations.

224.    Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's protected rights.

225.    As a direct and proximate result of the University's retaliatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

226.    Plaintiff has suffered irreparable injury.

227.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in retaliatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a.    That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of retaliation against Plaintiff;

b.    That this Honorable Court order any and all negative evaluations expunged from

Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h. That this Honorable Court award reasonable attorney's fees and costs; and

i. That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT VII
## RACE DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000e, *et seq.*

1-227. Plaintiff repeats and realleges paragraphs 1-227 above, as if fully set forth herein.

228. Plaintiff is a Black African-American male, age 67. He was one of the most senior Quinlan School faculty members, and one of the most senior, perhaps the most senior, Black African-American faculty member at Loyola.

229. Throughout his employment with Loyola, Plaintiff performed his job satisfactorily, Defendants' contrary allegations notwithstanding.

230. In its 93-year history, the Quinlan School of Business has never hired a Black African-American to a tenure-track position. Plaintiff came on faculty when his prior department,

33

HRER, merged with the Quinlan School.

231. Throughout the course of his employment with Loyola, Plaintiff's non African-American HRER co-workers have treated him with great hostility, disrespect, exclusion and incivility, causing psychological and physical injury.

232. Plaintiff has repeatedly informed the administration, and members of the University administration, that his co-workers treat him with hostility, incivility, exclusion and disrespect, and that he believes this conduct is a result of race discrimination.

233. The University took no action to meaningfully address Plaintiff's longstanding concerns that he was subjected to a hostile work environment due to his race, African-American. The University failed and refused to investigate Plaintiff's claims.

234. On information and belief, through the actions alleged hereinabove, Plaintiff has been disciplined more severely and treated less favorably than non African-American faculty members, including White and Asian faculty members.

235. Non Black African-American faculty members have been allowed to work a nine-month, three-quarter on-campus schedule, comparable to the schedule Plaintiff was seeking, and were neither disciplined nor terminated.

236. Plaintiff has been assigned courses for which he is not AQ qualified, as more fully set forth above. On information and belief, non Black African-American faculty members are not required to teach courses for which they are not AQ qualified, and are not subject to discipline or termination over such assignments.

237. Non Black African-American faculty members have been allowed to relocate their offices, while Plaintiff was forced to endure he hostile work environment where his office was located.

238. Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

239. Plaintiff has been discriminated against as a result of his race, Black African-American.

240. As a direct and proximate result of the University's discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

241. Plaintiff has suffered irreparable injury.

242. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in discriminatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of discrimination against Plaintiff on the basis of race;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to

compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h.   That this Honorable Court award reasonable attorney's fees and costs; and

i.   That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT VIII
## RACE DISCRIMINATION IN VIOLATION OF
## ILLINOIS HUMAN RIGHTS ACT

1-242.  Plaintiff repeats and realleges paragraphs 1-242 above, as if fully set forth herein.

243.    Plaintiff is a Black African-American male, age 67.  He was one of the most senior Quinlan School faculty members, and one of the most senior, perhaps the most senior, Black African-American faculty member at Loyola.

244.    Throughout his employment with Loyola, Plaintiff performed his job satisfactorily, Defendants' contrary allegations notwithstanding.

245.    On information and belief, in its 93-year history, the Quinlan School of Business has never hired a Black African-American to a tenure-track position, until the 2014-15 academic year. Plaintiff came on faculty when his prior department, HRER, merged with the Quinlan School.

246.    Throughout the course of his employment with Loyola, Plaintiff's non African-American HRER co-workers have treated him with great hostility, disrespect and incivility, causing psychological and physical injury.

247.    Plaintiff has repeatedly informed the administration, and members of the University administration, that his co-workers treat me with hostility, incivility and disrespect, and that he believes this conduct is a result of race discrimination.

36

248. The University took no action to meaningfully address Plaintiff's longstanding concerns that he was subjected to a hostile work environment due to his race, African-American. The University failed and refused to investigate Plaintiff's claims.

249. On information and belief, through the actions alleged hereinabove, Plaintiff has been disciplined more severely and treated less favorably than non African-American faculty members, including White and Asian faculty members.

250. Non Black African-American faculty members have been allowed to work a nine-month on-campus schedule, like the schedule Plaintiff was seeking, and were neither disciplined nor terminated.

251. Plaintiff has been assigned courses for which he is not AQ qualified, as more fully set forth above. On information and belief, non Black African-American faculty members are not required to teach courses for which they are not AQ qualified, and are not subject to discipline or termination over such assignments.

252. Non Black African-American faculty members have been allowed to relocate their offices.

253. Plaintiff has been discriminated against as a result of his race, Black African-American.

254. On July 31, 2013, Plaintiff filed charges with the Illinois Department of Human Rights ("IDHR"), alleging discrimination based on race.

255. On or about June 13, 2014, the IDHR issued Plaintiff a right to sue letter, a copy of which is attached hereto as Exhibit B.

256. Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's protected rights.

257. As a direct and proximate result of the University's discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss,

reputational loss, and the destruction of an academic career of more than three decades.

258. Plaintiff has suffered irreparable injury.

259. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in discriminatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of discrimination against Plaintiff on the basis of race;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h. That this Honorable Court award reasonable attorney's fees and costs; and

i. That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT IX
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000e, *et seq.*

1-259.  Plaintiff repeats and realleges paragraphs 1-259 above, as if fully set forth herein.

260.  By letter to the administration dated February 4, 2012, Plaintiff objected to the racially hostile work environment he suffered in the Quinlan School, and advised of the severe physical and psychological repercussions of the discriminatory and exclusionary environment.

261  Four days later, on February 8, 2013, Gini suddenly brought a list of alleged deficiencies with Plaintiff's performance, seeking severe discipline.  Gini had not previously brought these alleged deficiencies to Plaintiff's attention, or given him an opportunity to contest or remediate the alleged deficiencies.

262.  By e-mail dated February 13, 2013, Dean Getz initiated the disciplinary process against Plaintiff, issuing a series of charges including not only those raised by  Gini on February 8, 2013, but adding new allegations, and placing Plaintiff on paid administrative leave.

263.  The allegations of performance deficiencies asserted by Dr. Gini and Dean Getz were false and pretextual.

264.  On or about April 5, 2013, Dean Getz submitted a recommendation for a lengthy suspension without pay for Plaintiff to Provost Pelissero.

265.  On or about June 21, 2013, Provost Pelissero told Plaintiff that Defendants Getz and Gini had imposed the discipline to prevent Plaintiff from taking medical leave.

266.  In a letter of July 18, 2013, Provost Pelissero approved Plaintiff's suspension without pay, and issued directives requiring work that violated the recommendations of Plaintiff's medical providers, and that violated reasonable accommodations the University had previously provided.

267.    On or about July 31, 2013, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. EEOC, involving Provost Pelissero, Dean Getz and Dr. Gini, and alleging discrimination based on his race, disabilities, and retaliation.

268.    Defendants knew of Plaintiff's charge of discrimination.

269.    On or about July 31, 2013, Plaintiff filed charges of employment discrimination based on his race, disability, and retaliation involving Provost Pelissero, Dean Getz and Dr. Gini with the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission.

270.    Defendants knew of Plaintiff's protected activity.

271.    In or about September, 2013, the University and Plaintiff agreed to engage in settlement negotiations, and agreed to a "cooling-off" period, a stay of penalties and obligations, pending further negotiations.

272.    The University failed to negotiate in good faith, but broke off negotiations in December.

273.    Dean Getz recommended Plaintiff for termination, based upon a supposed failure to return to work and job abandonment.

274.    Dean Getz's accusations were false and pretextual.

275.    On or about February 24, 2014, refusing to recuse himself despite a clear conflict of interest, Provost Pelissero approved Dean Getz's recommendation of termination.

276.    Faculty members who have not engaged in protected activity were allowed to work a nine-month on-campus schedule, and were neither disciplined nor terminated.

277.    Faculty members who have not engaged in protected activity were not required to teach courses for which they were not academically qualified.

278.    Faculty members who have not engaged in protected activity were allowed to relocate

their office.

279. The termination of Plaintiff's employment was in retaliation for his complaints and criticisms of the University's racially-discriminatory employment and hiring practices.

280. Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

281. As a direct and proximate result of the University's retaliatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

282. As a direct and proximate result of the University's discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

283. Plaintiff has suffered irreparable injury.

284. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in retaliatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of retaliation against Plaintiff;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e.   That this Honorable Court award pre-judgment interest and costs;

f.   That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g.   That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h.   That this Honorable Court award reasonable attorney's fees and costs; and

i.   That this Honorable Court award such other and further relief as it may deem just and equitable.

**COUNT X**
**RETALIATION IN VIOLATION OF**
**ILLINOIS HUMAN RIGHTS ACT**
**FOR COMPLAINING OF RACE DISCRIMINATION**

1-284.   Plaintiff repeats and realleges paragraphs 1-284 above, as if fully set forth herein.

285.   By letter to the administration dated February 4, 2012, Plaintiff objected to the racially hostile work environment he suffered in the Quinlan School, and advised of the severe physical and psychological repercussions of the discriminatory and exclusionary environment.

286.   Four days later, on February 8, 2013, Dr. Gini suddenly brought a list of alleged deficiencies with Plaintiff's performance, seeking severe discipline.  Dr. Gini had not previously brought these alleged deficiencies to Plaintiff's attention, or given him an opportunity to contest or remediate the alleged deficiencies.

287.   By e-mail dated February 13, 2013, Dean Getz initiated the disciplinary process against Plaintiff, issuing a series of charges including not only those raised by  Dr. Gini on February 8, 2013, but adding new allegations, and placing Plaintiff on paid administrative leave.

288.   The allegations of performance deficiencies asserted by Dr. Gini and Dean Getz were

false and pretextual.

289.    On or about April 5, 2013, Dean Getz submitted a recommendation for a lengthy suspension without pay for Plaintiff to Provost Pelissero.

290.    On or about June 21, 2013, Provost Pelissero told Plaintiff that Defendants Getz and Gini had imposed the discipline to prevent Plaintiff from taking medical leave.

291.    In a letter of July 18, 2013, Provost Pelissero approved Plaintiff's suspension without pay, and issued directives requiring work that violated the recommendations of Plaintiff's medical providers, and that violated reasonable accommodations the University had previously provided.

292.    On or about July 31, 2013, Plaintiff filed charges of employment discrimination based on his race, disability, and retaliation involving Provost Pelissero, Dean Getz and Dr. Gini with the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission.

293.    Defendants knew of Plaintiff's protected activity.

294.    In or about September, 2013, the University and Plaintiff agreed to engage in settlement negotiations, and agreed to a "cooling-off" period, a stay of penalties and obligations, pending further negotiations.

295.    The University failed to negotiate in good faith, but broke off settlement negotiations in December.

296.    Dean Getz recommended Plaintiff for termination, based upon a supposed failure to return to work and job abandonment.

297.    Dean Getz's accusations were false and pretextual.

298.    On or about February 24, 2014, refusing to recuse himself despite a clear conflict of

interest, Provost Pelissero approved Dean Getz's recommendation of termination.

299.   Faculty members who have not engaged in protected activity were allowed to work a nine-month on-campus schedule, and were neither disciplined nor terminated.

300.   Faculty members who have not engaged in protected activity were not required to teach courses for which they were not academically qualified.

301.   Faculty members who have not engaged in protected activity were allowed to relocate their office.

302.   The termination of Plaintiff's employment was in retaliation for his complaints about the hostile and exclusionary work environment of the Quinlan School, and his criticisms of the University's racially-discriminatory employment and hiring practices.

303.   Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's protected rights.

304.   As a direct and proximate result of the University's retaliatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

305.   Plaintiff has suffered irreparable injury.

306.   Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in retaliatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a.   That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of retaliation against Plaintiff;

b.   That this Honorable Court order any and all negative evaluations expunged from

Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory and retaliatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h. That this Honorable Court award reasonable attorney's fees and costs; and

i. That this Honorable Court award such other and further relief as it may deem just and equitable.

**COUNT XI**
**VIOLATION OF 42 U.S.C.S. § 1981**
**Against All Defendants**

1-306.  Plaintiff repeats and realleges paragraphs 1-306 above, as if fully set forth herein.

307.  Plaintiff and Defendant University were parties to an employment contract, material terms of which are set forth in the Faculty Handbook, whereby Plaintiff, a tenured full professor, could only be discharged for cause.

308.  As more fully set forth above, Defendants University, Dean Getz, Dr. Gini and Provost Pelissero engaged in intentional discrimination and retaliation against Plaintiff in its performance of said contract, because he is Black African-American.

309.  Defendants terminated Plaintiff's employment contract and terminated his employment,

despite his satisfactory performance.

310. Defendants did not equally treat similarly-situated employees who were not Black African-Americans in the performance of their employment contracts.

311. Through the actions set forth more fully above, Defendants acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights.

312. As a direct and proximate result of Defendants' discriminatory treatment, Plaintiff suffered ill health, sustained physical injury, pain, suffering, humiliation, loss of income, other monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

313. Plaintiff has suffered irreparable injury.

314. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants engaged in discriminatory conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further acts of intentional discrimination against Plaintiff on the basis of race;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f.   That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g.   That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

h.   That this Honorable Court award reasonable attorney's fees and costs; and

i.   That this Honorable Court award such other and further relief as it may deem just and equitable.

**COUNT XII**
**INTERFERENCE WITH PLAINTIFF'S RIGHTS PURSUANT TO**
**THE FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601, *et seq.***

1-314.  Plaintiff repeats and realleges paragraphs 1-314 above, as if fully set forth herein.

315.   At all relevant times, Plaintiff had a serious medical condition, as defined by the FMLA.

316.   As set forth more fully above, because Defendants refused Plaintiff's requests for reasonable accommodation, Plaintiff was forced to take a medical leave under the Family and Medical Leave Act for the Fall Quarter, 2012.

317.   In the Spring of 2013, Plaintiff again attempted to engage in the interactive process with Defendants regarding his requests for reasonable accommodation.

318.   Instead of engaging in the interactive process with Plaintiff, Defendants bought false and pretextual charges of performance deficiencies against Plaintiff, and suspended him without pay.

319.   Provost Pelissero told Plaintiff that Defendants brought disciplinary charges against Plaintiff because they were afraid Plaintiff would take another FMLA leave.

320.   Defendant Loyola employs more than 500 employees.

321.   Plaintiff had worked more than 1250 hours within the twelve months preceding his

request for FMLA leave.

322.   Plaintiff was entitled to leave under the FMLA, and Defendant University had notice as to Plaintiff's need for leave under the FMLA.

323.   Defendants intentionally interfered with Plaintiff's substantive statutory rights as an eligible employee under 29 U.S.C. § 2615(a)(1) by suspending Plaintiff so that he could not take FMLA leave, and ultimately terminating his employment.

324.   Plaintiff was entitled to FMLA leave, and Defendants unlawfully, intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights, interfered with Plaintiff's exercise of that right.

325.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered ill health, sustained physical injury, pain, suffering, humiliation, loss of income, other monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

326.   Plaintiff has suffered irreparable injury.

327.   Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants violated Plaintiff's substantive rights under the FMLA, and enter a judgment making the following findings and granting the following relief:

   a.  That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further violations of the FMLA;

   b.  That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

   c.  That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory suspensions and termination;

d.  That this Honorable Court award Plaintiff consequential damages;

e.  That this Honorable Court award pre-judgment interest and costs;

f.  That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g.  That this Honorable Court award liquidated damages to Plaintiff;

h.  That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

i.  That this Honorable Court award reasonable attorney's fees and costs; and

j.  That this Honorable Court award such other and further relief as it may deem just and equitable.

<u>**COUNT XIII**</u>
<u>**RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**</u>
<u>**29 U.S.C. § 2601, *et seq.***</u>

1-327.  Plaintiff repeats and realleges paragraphs 1-327 above, as if fully set forth herein.

328.  Plaintiff took an FMLA during the Fall Quarter, 2012.

329.  Plaintiff resumed his regular duties during the Winter Quarter of 2012, and as set forth more fully above, continued to make requests for reasonable accommodation for his disabilities, and engage in the interactive process with the University.

330.  Instead of engaging in the interactive process in good faith, the University issued disciplinary charges against Plaintiff, and suspended him without pay.

331.  On or about June 21, 2013, Provost Pelissero informed Plaintiff that the University brought disciplinary charges against Plaintiff because they were afraid that he would take another FMLA leave.

332.     Plaintiff was suspended and ultimately terminated from his employment with the University because he availed himself of the rights and guarantees of the FMLA, and to prevent him from taking further leave under FMLA.

333.     There is a causal link between Plaintiff availing himself of his FMLA rights, and his suspension and termination.

334.     Defendants unlawfully, intentionally, willfully, maliciously and/or with reckless indifference, retaliated against Plaintiff for taking FMLA leave, and to stop him from taking further FMLA leave.

335.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered ill health, sustained physical injury, pain, suffering, humiliation, loss of income, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

336.     Plaintiff has suffered irreparable injury.

337.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendants retaliated against Plaintiff in violation of the FMLA, and enter a judgment making the following findings and granting the following relief:

a.    That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further retaliation against Plaintiff in violation of the FMLA;

b.    That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c.    That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his discriminatory suspensions and termination;

d.   That this Honorable Court award Plaintiff consequential damages;

e.   That this Honorable Court award pre-judgment interest and costs;

f.   That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's federally protected rights;

g.   That this Honorable Court award liquidated damages to Plaintiff;

h.   That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the discrimination by Defendants;

i.   That this Honorable Court award reasonable attorney's fees and costs; and

j.   That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT XIV
## TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST DEFENDANTS GETZ AND GINI

1-337.  Plaintiff repeats and realleges paragraphs 1-337 above, as if fully set forth herein.

338.   A valid and enforceable contract existed between Plaintiff and the University, with material terms set forth in the Faculty Handbook.

339.   As a tenured and full professor, Plaintiff had an enforceable expectation of contract continuation and of continued employment with the University for life.

340.   Plaintiff performed his duties under his contract. At all times, Plaintiff was ready, willing, and able to perform his contractual duties.

341.   Defendants Getz and Gini knew of the contract between Plaintiff and the University, and of Plaintiff's reasonable expectation of continuing appointment with the University.

342.   Through, *inter alia,* the actions set forth above, Defendant's Getz and Gini influenced the

University to suspend and ultimately terminate Plaintiff's employment.

343.    Defendants Getz and Gini willfully, intentionally, and unjustifiably induced the University to suspend and terminate Plaintiff by refusing to engage in the interactive process in good faith, and by bringing false and pretextual charges of performance deficiencies, misconduct and job abandonment against Plaintiff

344.    As a result of the inducement of Defendants Getz and Gini, Plaintiff's employment with the University was terminated.

345.    With actual malice, Defendants Getz and Gini, by intentionally and unjustifiably inducing the University to suspend and terminate Plaintiff's employment,  acted in their own self interests, outside the scope of their agency relationship with the University, and contrary to the interests of the University.

346.    Defendants Getz and Gini acted with malice to overcome any existing privilege to act on behalf of the University, and to interfere with the contract between the University and Plaintiff, and to interfere with Plaintiff's prospective employment.

347. Defendants Getz and Gini engaged in conduct completely unrelated to the interests of the University, which gave rise to their right to act on behalf of the University.

348. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered ill health, sustained physical injury, pain, suffering, humiliation, loss of income, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

349.    Plaintiff has suffered irreparable injury.

350.    Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court find that Defendants Getz and Gini engaged in tortious interference, and enter a judgment making the

following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further tortious interference with Plaintiff's contract with the University against Plaintiff;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his unlawful suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the actions of Defendants Getz and Gini;

h. That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT XV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST DEFENDANTS GETZ AND GINI

1-350. Plaintiff repeats and realleges paragraphs 1-350 above, as if fully set forth herein.

351. As a tenured and full professor, Plaintiff had an enforceable expectation of continuation of his contract and of continued employment with the University for life.

352. On information and belief, Defendants Getz and Gini influenced the University to suspend

and terminate Plaintiff's employment.

353.   Defendants Getz and Gini willfully, intentionally, and unjustifiably induced the University to suspend and terminate Plaintiff by bringing refusing to engage in the interactive process in good faith, and by bringing false and pretextual charges of performance deficiencies and job abandonment against Plaintiff

354.   As a direct and proximate result of the inducement of Defendants Getz and Gini, Plaintiff's employment with the University was terminated.

355.   With actual malice, Defendants Getz and Gini, by intentionally and unjustifiably inducing the University to suspend and terminate Plaintiff's employment,  acted in their own self interests, outside the scope of their agency relationship with the University, and contrary to the interests of the University.

356.   Defendants Getz and Gini acted with malice to overcome any existing privilege to act on behalf of the University, and to interfere with the contract between the University and Plaintiff, and to interfere with Plaintiff's prospective employment.

357.   Defendants Getz and Gini engaged in conduct completely unrelated to the interests of the University, which gave rise to their right to act on behalf of the University.

358.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered ill health, sustained physical injury, pain, suffering, humiliation, loss of income, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

359.   Plaintiff has suffered irreparable injury.

360.   Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court find that Defendants Getz and Gini engaged in tortious conduct against Plaintiff, and enter a judgment

making the following findings and granting the following relief:

a.  That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further tortious interference with Plaintiff's prospective economic advantage with the University against Plaintiff;

b.  That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c.  That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his unlawful suspensions and termination;

d.  That this Honorable Court award Plaintiff consequential damages;

e.  That this Honorable Court award pre-judgment interest and costs;

f.  That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's rights;

g.  That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the actions of Defendants Getz and Gini;

h.  That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT XVI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST DEFENDANTS GETZ, GINI, AND PELISSERO

1-360.  Plaintiff repeats and realleges paragraphs 1-360 above, as if fully set forth herein.

361.  As set forth at length above, Defendants Getz, Gini, and Pelissero rescinded accommodations that Plaintiff had previously arranged with the Administration, and refused to engaged in the interactive process in good faith.

362.     Defendants Getz, Gini, and Pelissero told Plaintiff that he was required to teach during the Winter Quarter, despite knowing that Plaintiff's disabilities made teaching in the Winter Quarter dangerous to Plaintiff's health.

363.     Defendants refused Plaintiff's request to transfer offices, knowing that they were forcing Plaintiff to remain in an environment that he found hostile and exclusionary, and that caused him severe emotional distress.

364.     Defendants engaged in other intentional acts against Plaintiff, designed to cause him great emotional distress, including, but not limited to, assigning Plaintiff to teach courses for which he was not academically qualified, and bringing false charges of performance deficiencies against him.

365.     The conduct of Defendants Getz, Gini, and Pelissero was extreme and outrageous.

366.     Defendants Getz, Gini, and Pelissero intended to cause or recklessly or consciously disregarded the probably of causing emotional distress to Plaintiff.

367.     Defendants were aware the Plaintiff was particularly susceptible to emotional distress.

368.     Plaintiff did suffer extreme emotional distress, and physical injury and harm, in that Plaintiff's physical medical conditions were exacerbated by the extreme emotional distress.

369.     Defendants Getz, Gini, and Pelissero's conduct actually and proximately caused Plaintiff's emotional distress.

370.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered ill health, sustained physical injury, pain, suffering, humiliation, loss of income, monetary loss, reputational loss, and the destruction of an academic career of more than three decades.

371.     Plaintiff has suffered irreparable injury.

372.     Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court find that Defendants Getz, Gini, and Pelissero engaged in tortious conduct against Plaintiff, and enter a judgment making the following findings and granting the following relief:

a. That this Honorable Court grant an injunction against Defendants to prevent Defendants from engaging in further intentional infliction of emotional distress against Plaintiff;

b. That this Honorable Court order any and all negative evaluations expunged from Plaintiff's personnel file;

c. That this Honorable Court award Plaintiff reinstatement and/or front pay from the date of his unlawful suspensions and termination;

d. That this Honorable Court award Plaintiff consequential damages;

e. That this Honorable Court award pre-judgment interest and costs;

f. That this Honorable Court award punitive damages to Plaintiff for the intentional, willful, and deliberate disregard for Plaintiff's rights;

g. That this Honorable Court award Plaintiff money reasonably calculated to compensate him for all monetary damages sustained as a result of the actions of Defendants Getz, Gini, and Pelissero;

h. That this Honorable Court award such other and further relief as it may deem just and equitable.

DATED:          SEPTEMBER 11, 2014


                                        Respectfully Submitted,
                                         s/ Elaine K.B. Siegel
                                        Elaine K.B. Siegel
                                        One of Plaintiff's Attorneys

OF COUNSEL:

Elaine K.B. Siegel
ELAINE K.B. SIEGEL & ASSOCIATES, P.C.
11 E. Adams, Suite1401
Chicago, Illinois 60603
(312) 583-9970