UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAMONT E. STALLWORTH, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> LOYOLA UNIVERSITY CHICAGO, ALFRED GINI, in his individual capacity, KATHLEEN GETZ, in her individual capacity, and JOHN PELISSERO, in his individual capacity, <br><br> Defendants. | No. 14 C 7084 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lamont E. Stallworth, Ph.D. ("Stallworth") was a tenured full professor at Loyola University Chicago's Quinlan School of Business ("Quinlan") from 1981 to February 2014. Following his February 2014 employment termination, Stallworth filed this lawsuit alleging discrimination and retaliation based on race and disability, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the ADEA, 29 U.S.C. § 621; and the ADA 42 U.S.C. § 12112 et seq., and 42 U.S.C. § 1981; and interference under the Family and Medical Leave Act ("FMLA"). His original 18-count complaint was later reduced to a 7-count Second Amended Complaint, referred to herein as the "SAC." Before me now is Defendants' Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' Motion to Dismiss is granted in part.

## I. BACKGROUND

Plaintiff Stallworth, a 67-year-old African-American male, held a tenured position at Loyola University Chicago ("Loyola") for 33 years. At the time of his termination in February

1

2014, Plaintiff worked at Quinlan School of Business where he specialized in alternative dispute resolution ("ADR"), human resources, employment law and public policy. Plaintiff asserts his claims against Loyola and three individual Loyola employees. Defendant Alfred Gini ("Gini") is the Chair of Loyola's Department of Management—a department within Quinlan School of Business—and was Plaintiff's direct supervisor beginning in July 2012. Defendant Kathleen Getz ("Getz") was the Dean of Quinlan during the relevant time frame. Defendant John Pelissero ("Pelissero") was Loyola's Provost during the relevant time frame.

Plaintiff alleges that he suffers from numerous health conditions for which he requires accommodations, including depression, generalized anxiety disorder, seasonal affective disorder, sleep apnea, kidney disease, neuropathy, diabetes and tinnitus. Due to these ailments, Plaintiff received accommodations including a nine-month on-campus work schedule of Fall, Spring and Summer Quarters, with no teaching or non-teaching duties on campus during Winter Quarter. Plaintiff asserts that this arrangement lasted without issue for about twenty-five years and was agreed upon between Plaintiff and Loyola pursuant to EEOC proceedings in 2004 ("the EEOC compromise agreement").

Early in 2012, Plaintiff informed the Loyola administration that he needed to continue his nine-month on-campus work schedule as an ADA accommodation. Plaintiff alleges that the administration failed to respond for over a month. On or about February 7, 2012, Plaintiff also requested the accommodation of relocating his office to minimize stressors that threatened his health. On February 27, 2012, Plaintiff made a formal request to Provost Pelissero to continue his accommodations. In or around June 2012, Pelissero enlisted Dean Getz and Department Chair Gini to facilitate and implement Plaintiff's accommodation requests and appointed Human Resources Director Joan Stasiak ("Stasiak") to coordinate Plaintiff's requests. Accordingly,

2

Plaintiff submitted a second formal request to Stasiak on June 5, 2012, to which the university did not respond for over a month. Plaintiff requested a response from Stasiak on July 12, 2012, and Stasiak returned an offer of a nine-month schedule with a 1/6 pay reduction.

On August 1, 2012, Loyola agreed to relocate Plaintiff's office but required him to do so in ten days, while he was teaching an intensive summer course and preparing for Fall Quarter. Plaintiff requested that he be permitted to move offices after Winter Quarter and that Loyola clean and paint his office. In response, Loyola withdrew the offer to move his office.

On September 21, 2012, Gini assigned Plaintiff teaching and administrative duties during Winter Quarter, a schedule that was inconsistent with the EEOC compromise agreement, the recommendations of Plaintiff's doctors, and Stasiak's August 1, 2012 proposal. Plaintiff claims Loyola "failed to engage in the interactive process in good faith" after the schedule change and knowingly gave him assignments that exacerbated his health issues, forced him to take an FMLA short-term disability leave for Fall Quarter 2012, and caused him physical and emotional distress.

In December 2012, while Plaintiff was on leave, Gini called Plaintiff at home to offer him a $100,000 early retirement incentive. On January 9, 2013, Gini assigned Plaintiff a course called Managing and Motivating the Workplace, which Plaintiff contends he is not qualified to teach. On February 4, 2012, Plaintiff wrote the administration to advise them of their statutory obligations as related to his disabilities.

Gini and Getz initiated the disciplinary process against Plaintiff in February 2013, charging Plaintiff with performance deficiencies that he claims are false and pretextual, and putting Plaintiff on paid administration leave. In April 2013, Getz recommended to Pelissero that Plaintiff be suspended without pay. Pelissero allegedly told Plaintiff on or about June 21, 2013

that Getz and Gini had made these disciplinary recommendations to prevent Plaintiff from taking medical leave under FMLA. Pelissero then approved the suspension without pay on July 18, 2013.

Two weeks later, Plaintiff filed a discrimination charge with the Illinois Department of Human Rights ("IDHR") and the EEOC, alleging discrimination based on race, disability, and retaliation. While that charge was pending, Pelissero directed Plaintiff to perform administrative duties that allegedly violated his accommodation requests. The parties continued to negotiate, with settlement negotiations commencing in September 2013 and breaking off, unresolved, in late December. Finally, on January 31, 2014, Getz recommended Plaintiff for termination based on "job abandonment," or Plaintiff's failure to return to work. Plaintiff contends that this was a false and pretextual excuse. Loyola formally terminated Plaintiff on February 24, 2014 due to "job abandonment" and "continued misconduct."

Plaintiff filed the instant lawsuit in September 2014, pursuant to the two notices of right to sue he received from IDHR and the EEOC in June 2014. On June 6, 2014, Plaintiff filed a third Charge with both the EEOC and IDHR, this time complaining that his termination violated his statutory rights. Plaintiff received a notice of right to sue on this Charge on April 24, 2015, seven months after he had initiated the instant lawsuit.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In addition to the complaint, a court may also consider documents attached to or referenced in the complaint. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1249 (7th Cir.1994)). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007).

## III. DISCUSSION

### A. Failure to Exhaust Administrative Remedies (Counts I-V)

Defendants argue that Counts I (ADA Discrimination), II (ADA Retaliation), III (IHRA Disability Discrimination), IV (IHRA Disability Retaliation), and V (Title VII Race Retaliation) should be dismissed to the extent that they relate to Plaintiff's February 2014 termination, as Plaintiff failed to exhaust administrative remedies for that complaint. Because Plaintiff attached the June 2014 notices of right to sue to his SAC but not attach the April 2015 notice, it did appear from the face of the complaint that he had not exhausted his administrative remedies regarding the termination Charge. However, since the addition of this Charge does not add new parties or legal theories to the underlying case, I have granted Plaintiff leave to amend the SAC to attach evidence of his exhaustion of the termination Charge. Therefore, Defendants' exhaustion argument is denied at this time to permit Plaintiff to incorporate the termination Charge into his complaint.

Defendants also assert that Counts I through V should be dismissed against the individual defendants Gini, Getz, and Pelissero because the ADA, Title VII, and the IHRA do not provide for individual liability. *See, e.g., Washington v. University of Illinois at Chicago*, 2010 WL 1417000 at *3 (N.D. Ill. 2010) (citations omitted); *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5

5

(7th Cir. 1999). Moreover, Defendants say these Counts are redundant as to the individual defendants in their official capacities since all the Counts have already been asserted against Loyola itself. I agree, and dismiss Counts I through V against the individual defendants accordingly.

**B. Failure to State a Claim under Section 1981 (Count VI)**

Next, Defendants attack Count VI, which asserts a claim under 42 U.S.C. § 1981. Section 1981 covers only those claims related to race-based discrimination and retaliation. 42 U.S.C.A. § 1981 (a) (providing "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ."). In Count VI, Plaintiff incorporates his allegations of racial discrimination and retaliation but also references his disability claims, which are not properly asserted under Section 1981. Therefore, I am partially dismissing Count VI insofar as it asserts non-race-related discrimination and retaliation claims.

**C. Failure to State a Claim Under FMLA (Count VII)**

To state an FMLA interference claim, a plaintiff must show that "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). Defendants assert that Plaintiff never alleged that he was denied an FMLA benefit. Rather, he took FMLA leave during Fall Quarter 2012 and then alleges Loyola suspended him in 2013 for purposes of preventing him from taking further FMLA leave. Crucially, he does not allege that he ever requested FMLA leave and was denied.

Interference claims require that the plaintiff asserted some right with which his employer then interfered. *Nicholson v. Pulte Homes Corp.*, 690 F. 3d 819, 825 (7th Cir. 2012). An

employer cannot interfere with an asserted right unless he is on notice that the right has been asserted. *Id*. Plaintiff's argument amounts to the type of preemptive interference argument that has been rejected by the Seventh Circuit. *See, e.g., Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827-28 (7th Cir. 2012) (dismissing a plaintiff's "speculative" interference claim when the plaintiff was terminated after a previous leave request had been granted and before any future leave requests had been lodged). Here, Plaintiff makes claims about Defendants' denial or refusal to address his disability accommodations as well as alleged retaliation for those requests, but he does not allege that he ever requested and was denied leave pursuant to the FMLA. Although Plaintiff asserts that Defendants "had notice as to Plaintiff's need for leave under the FMLA," he does not claim to have filed an actual FMLA leave request after the Fall Quarter 2012 request that was granted. Thus, he has failed to state a claim under the FMLA and Count VII is dismissed in its entirety.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part. Counts I through V and Count VII are dismissed in their entirety. Count VI is dismissed insofar as it asserts non-race-related discrimination and retaliation claims.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: July 11, 2016